# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ENEPI SISNEROZ, | 1:07-cv-01221-LJO-SMS-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| STEVEN MAYBERG, et al., | (Doc. 13.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

Plaintiff Frank Enepi Sisneroz ("plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action.  This action proceeds on plaintiff's complaint, filed August 21, 2007, against defendants Steven Mayberg and Ben McLain for violation of the Due Process Clause of the Fourteenth Amendment for implementing a program under which plaintiff alleges that his laptop computer will be taken away.  (Doc. 4.)  Now pending is defendants' motion for summary judgment filed March 17, 2008.  (Doc. 13.)

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiff filed the complaint initiating this action on August 21, 2007.  (Doc. 4.)  On August 29, 2007, the court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and found that it stated a cognizable claim for relief under section 1983 against defendants Mayberg and McLain ("defendants") for violation of the Due Process Clause of the Fourteenth Amendment. (Doc. 7.)  On October 17, 2007, the court ordered the United States Marshal to serve process upon defendants. (Doc. 10.)  On March 17, 2008, defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, as barred by the Eleventh Amendment, for failure to state a claim

1

1  under § 1983, and for failure to exhaust administrative remedies.  (Doc. 13.)  On June 2, 2008,

2  plaintiff filed an opposition to the motion to dismiss.  (Doc. 20.)  On June 12, 2008, defendants filed

3  a reply to plaintiff's opposition.  (Doc. 21.)  On July 16, 2008, plaintiff filed a surreply.  (Doc. 24.)

4      On July 14, 2008, the court issued an order to treat defendants' motion to dismiss as a motion

5  for summary judgment under Rule 56 and ordered the parties to file further briefs within thirty days.

6  (Doc. 23.)  On August 11, 2008, defendants filed a memorandum of points and authorities in support

7  of the motion for summary judgment, with supporting documentation.  (Docs. 25-28.)  On October

8  16, 2008, plaintiff filed an opposition to the motion for summary judgment.  (Docs. 29, 30, 32.)[1]  On

9  October 24, 2008, defendants filed a reply to plaintiff's opposition.  (Doc. 33.)

10 **II.    SUMMARY JUDGMENT STANDARD**

11      Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

12 as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

13 Civ. P. 56(c).  Under summary judgment practice, the moving party

14  always bears the initial responsibility of informing the district court
15  of the basis for its motion, and identifying those portions of "the
    pleadings, depositions, answers to interrogatories, and admissions on
16  file, together with the affidavits, if any," which it believes
    demonstrate the absence of a genuine issue of material fact.

17 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

18 burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made

19 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

20 Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

21 motion, against a party who fails to make a showing sufficient to establish the existence of an

22 element essential to that party's case, and on which that party will bear the burden of proof at trial.

23 Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

24 case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

25 should be granted, "so long as whatever is before the district court demonstrates that the standard

26 for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

27

28      [1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on December 16, 2007.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 9.)

2

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2    party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

3    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

4    In attempting to establish the existence of this factual dispute, the opposing party may not

5    rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form

6    of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

7    Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

8    contention is material, i.e., a fact that might affect the outcome of the suit under the governing law,

9    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

10    Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

11    evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v.

12    Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13    In the endeavor to establish the existence of a factual dispute, the opposing party need not

14    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16    trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

17    pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

19    amendments).

20    In resolving the Motion for Summary Judgment, the Court examines the pleadings,

21    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

22    Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

23    all reasonable inferences that may be drawn from the facts placed before the court must be drawn

24    in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369

25    U.S. 654, 655 (1962)(per curiam).  Nevertheless, inferences are not drawn out of the air, and it is

26    the opposing party's obligation to produce a factual predicate from which the inference may be

27    drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810

28    F.2d 898, 902 (9th Cir. 1987).

1    Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

2    that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

3    could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4    trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (*citation omitted*).

5    **III.    UNDISPUTED FACTS**[2]

6        1.    Plaintiff Frank Enepi Sisneroz is in the custody of the California Department of
7              Mental Health ("DMH"), pursuant to California Welfare and Institutions Code
              sections 6600, et seq., and is housed at Coalinga State Hospital ("CSH").

8        2.    Plaintiff owns a personal laptop computer and has since August 1, 2006.

9        3.    Patients committed to CSH pursuant to Welfare and Institutions Code sections 6600,
10             et seq. are not permitted to have access to the Internet.

11       4.    In 2006, CSH issued Administrative Directive No. 654 ("AD 654"), providing for
              and establishing the policy for the use of personal laptop computers by patients of
12             CSH.[3]

13       5.    AD 654 states: "[u]se of a personal computer and associated accessories and software
              is a privilege which is determined by the Individual's [sic] appropriate safe guarding,
              usage, and possession of files, disks, and other media."[4]

14       6.    AD 654 states: [a]ll external communication capability will be disabled before
15             delivery to the Individuals with the exception of USB, serial, and parallel ports for
              the use of approved external devices."

16       7.    Attachment A of AD 654 provides the specific criteria for the individual laptops
17             permitted by the directive.

18   ///

19

20       [2]In plaintiff's opposition filed October 16, 2008, he responded to the statement of facts in defendants'
     memorandum of points and authorities and referred to some of defendants' undisputed facts. Doc. 32 at 4-7.
21   However, plaintiff did not admit or deny any of the specific facts set forth by defendants as undisputed.  See Local
     Rule 56-260(b).  Therefore, the court has compiled the summary of undisputed facts from defendants' statement of
22   undisputed facts and plaintiff's verified complaint.  A verified complaint in a pro se civil rights action may constitute
     an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's
23   personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d
     196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed.R.Civ.P.
24   56(e).  Because plaintiff neither submitted his own statement of undisputed facts nor addressed specific facts in
     defendants' statement of undisputed facts, the court accepts, for the most part, defendants' version of the undisputed
25   facts where plaintiff's verified complaint is not contradictory.

26       [3]The court notes that defendants did not distinguish between AD 654 effective July 28, 2006 and AD 654
     effective November 9, 2006.  The July directive would have been in effect on September 2, 2006 when plaintiff
27   received his laptop.  However, the November directive was not in effect until after plaintiff received his laptop.

28       [4]This language was not present in the July 28, 2006 AD 654, although it appeared in the November 9, 2006
     AD 654.

                                              4

8.  Attachment A of AD 654 requires wireless capability on patients' laptops to be removed either by the vendor or Information Technology.

9.  Attachment A of AD 654 requires that all external ports be disabled on patients' laptops.

10. AD 654 states: "Compact disks ("CD-RWs") will be available for Individual [sic] purchase in the Hospital Canteen.[5]   CD-RWs will be indelibly marked with Individual's CSH number at the time of purchase.   The canteen store is the designated vendor of Individual's CD-RWs."

11. Due to contraband and operational problems, on February 28, 2007, the Patient Computer Technology Committee issued a memorandum explaining that there was an immediate moratorium, by the order of the Executive Director, on the purchase of new laptop computers by patients.

12. The moratorium implemented on February 28, 2007 did not alter the policy for those who already owned personal laptop computers, such as Frank Sisneroz.

13. The February 28, 2007 memorandum indicated that the CSH Administration would discuss the disposition of existing individual computers with the Patient Advisory Council for determination of further policy direction.

14. On February 27, 2008, Acting Executive Director Norm Kramer issued a memorandum that clarified the current status of the AD 654 laptop computer policy.

15. The February 27, 2008 memorandum explained that there will be no changes to the existing policy provided for in AD 654 as the policy related to patients that currently own personal laptops.

16. The February 27, 2008 memorandum explained that DMH and CSH are working on possible amendments to the laptop policy.

17. DMH and CSH are working on possible amendments to the laptop computer policy.

18. In March of 2008, at the direction of Acting Executive Director Norm Kramer, a committee was formed.  The CSH committee consisted of CSH staff and CSH patient representatives from the Office of Patients Rights.

19. The CSH committee formed by Norm Kramer was tasked with drafting proposed changes to the current computer policy.

20. CSH committee meetings were suspended when DMH notified CSH that it would be forming a statewide committee to develop a policy for all hospitals.

21. DMH has instructed CSH that no changes to local hospital computer policies should be made pending the outcome of the statewide policy.

22. Pending the outcome of the statewide policy, proposals to provide shared computers to the patients or otherwise revise the CSH policy have been suspended.

---

[5]A CD-RW is defined at Answers.com as a compact-disk format that allows audio or other digital data to be written, read, erased, and rewritten.  http://www.answers.com/topic/cd-rw.

23.    There is no current effort to confiscate existing personal laptop computers and return them to either the patient's individual property or relatives.

24.    The statewide computer policy committee has met several times via teleconference.

25.    The statewide computer policy committee is comprised of Information Technology professionals from each state hospital and DMH headquarters, DMH legal staff and Office of Patients Rights Representatives.

26.    Office of Patients Rights Representative Michelle Midget has provided input at previous statewide computer policy committee meetings.

27.    The CSH staff has provided copies of the existing policies and those proposed by CSH patients to the statewide policy committee meetings for review and consideration.

28.    As of August 8, 2008, the statewide computer policy committee had not decided on a statewide computer policy nor has it taken steps to implement any such policy.

29.    If any changes are to be implemented, the patients at CSH will be provided with sufficient notice to voice any concerns or objections to the policy change.

30.    In Rhoden v. Mayberg, et al., E.D. Cal. Court Case No. 1:07-cv-01151-LJO-DLB-PC ("Rhoden"), a civil detainee housed at CSH filed a complaint alleging a violation of his Fourteenth Amendment Due Process Clause rights based on a claim CSH intends to confiscate his personal laptop computer.

31.    On July 14, 2008, Magistrate Judge Dennis Beck recommended that Rhoden be dismissed for a lack of subject matter jurisdiction because the plaintiff lacked standing and the matter was not ripe for review.

32.    In Rhoden, DMH and CSH introduced evidence "stating that while amendments to the laptop policy are possible, there are no present efforts to confiscate existing personal laptop computers."

## IV.    SUMMARY OF COMPLAINT

Plaintiff, a civil detainee defined pursuant to California Welfare and Institutions Code § 6600 et seq., is currently detained at the Coalinga State Hospital ("CSH") in Coalinga, California, where the events at issue allegedly occurred.[6]  Plaintiff filed the complaint initiating this action on August 21, 2007.  (Doc. 4.)  Plaintiff names as defendants Steven Mayberg (Executive Director of DMH) and Ben McLain (Acting Executive Director of CSH).

///

///

---

[6]Civil detainees are not prisoners within the meaning of the Prison Litigation Reform Act.  Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

1    Plaintiff alleges as follows in the complaint:

2    Plaintiff's family bought him a laptop computer which he received at CSH on September 2,

3    2006.  Plaintiff was required to sign an agreement to comply with CSH's AD 654 which established

4    guidelines for individual owned laptop computers.  On February 23, 2007, the Department of Police

5    Services ("DPS") at CSH conducted a hospital-wide search and searched plaintiff's living area and

6    his laptop computer.  There was no evidence of misuse found in plaintiff's laptop.  On February 28,

7    2007, CSH implemented a moratorium on the purchase of individual owned computer equipment

8    and software previously allowed by AD 654.  Under the moratorium, CD-RWs became contraband

9    because of infractions by a few individuals at CSH.  The moratorium memorandum stated that the

10   disposition of existing individual owned equipment would be discussed with the Patient Advisory

11   Council for determination of further policy direction.  Officers of the DPS took most of plaintiff's

12   CD-RWs, even though plaintiff had complied with the rules and the terms of the agreement.  The

13   CSH administration told Patient Representatives that all laptop computers would be taken away by

14   the end of 2007 under a new program in which patients at CSH would be forced to send their

15   personal laptop computers home.

16   Plaintiff claims that defendants have violated his rights under the First, Fourth, and

17   Fourteenth Amendments.[7]  Plaintiff requests injunctive relief through a court order enjoining the

18   CSH administration from taking his laptop computer, or in the alternative, compensatory damages

19   for loss of his computer, accessories, and legal data.

20   **V.    PLAINTIFF'S CLAIMS FOR RELIEF**

21        **1.    Subject Matter Jurisdiction**

22   Defendants argue that plaintiff's action for injunctive relief must be dismissed for lack of

23   subject matter jurisdiction, because plaintiff lacks standing, and the entire matter is not ripe for

24   decision.

25   ///

26   ///

27   _____

28   [7]This action now proceeds only on plaintiff's claim for violation of the Due Process Clause of the
Fourteenth Amendment.

1

### A.   Standing

2       Federal courts are courts of limited jurisdiction and under Article III, as a preliminary matter,

3  the court must have before it an actual case or controversy.  U.S. Const. art. III; City of Los Angeles

4  v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of

5  Church and State, Inc., 454 U.S. 464, 471 (1982); Jones v. City of Los Angeles, 444 F.3d 1118, 1126

6  (9th Cir. 2006).  If the court does not have an actual case or controversy before it, it has no power

7  to hear the matter in question.  Id.  "A federal court may issue an injunction [only] if it has personal

8  jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to

9  determine the rights of persons not before the court." Zepeda v. United States Immigration Service,

10 753 F.2d 719, 727 (9th Cir. 1985).

11      At a bare minimum, standing to bring any action requires that plaintiff "show that [he]

12 suffered an injury in fact, there was a causal connection between the injury and the conduct

13 complained of, and the injury is likely to be redressed by a favorable decision." Davis v. Yageo

14 Corp., 481 F.3d 661, 673 (9th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-

15 61 (1992)).  The injury in fact requirement must involve "an invasion of a legally protected interest

16 which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or

17 hypothetical . . ." Id. at 559-560; Daimler Chrysler Corp. V. Cuno, 547 U.S. 332, 344 (2006); see

18 Pennell v. City of San Jose, 485 U.S. 1, 8 (1988) – "a realistic danger of sustaining a direct injury"

19 required (emphasis added).  Where plaintiff seeks prospective injunctive relief, any threatened future

20 injury must be real and immediate, not conjectural or hypothetical, in order to confer Article III

21 standing. Lujan, 504 U.S. at 560; San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121,

22 1126 (9th Cir. 1996).  "[T]he mere existence of a statute, which may or may not ever be applied to

23 [a] plaintiff[], is not sufficient to create a case or controversy within the meaning of Article III." Id.

24      Defendants argue that the undisputed facts, along with plaintiff's complaint, prove that

25 plaintiff has failed to satisfy the injury in fact requirement, because there is no evidence of a current

26 effort to remove plaintiff's computer from his possession. In the complaint, plaintiff seeks

27 prospective injunctive relief enjoining the defendants from removing his personal computer from

28

his possession.[8]  (Cmp. at 9:18-19.)  Plaintiff's complaint is based on plaintiff's belief that defendants want to start a new program after they force all individuals to send their laptops home, and that all laptops will be taken by the end of 2007.  (Cmp. at 5:22-23.)  Plaintiff alleges that "Defendants want to confiscate my computer and force me to send it home to my family without any compensation."  (Cmp. at 5:2-3.)  There is a policy that permits plaintiff's ownership of his computer, AD 654, and plaintiff owns a computer pursuant to that directive.  (Undisputed Facts ("UF") 2, 4, 12, 14-15.)  While DMH has formed a statewide computer policy committee and may make policy changes to CSH's computer policy in the future, those policy changes have not yet been decided and there have been no efforts to implement any such changes. (UF 21, 27.) CSH has been instructed by DMH that no changes can be made to their current computer policy, AD 654, as relates to patients who currently own laptops.  (UF 14, 21.)  Defendants argue that the undisputed facts show there is no current effort by CSH administration to confiscate his personal laptop and return it to either his relatives or his personal property, which is contrary to plaintiff's conjecture. (UF 23.) Defendants also present evidence of a ruling made by this court in a similar case, where there was no evidence of a current effort to confiscate CSH patients' computers, and the judge concluded that the plaintiff lacked standing and recommended dismissal.[9]  (UF 30-32.)  Defendants conclude that because the undisputed facts demonstrate that there is no actual or imminent threat of plaintiff's computer being confiscated, plaintiff cannot establish injury sufficient to confer standing and therefore, the complaint should be dismissed for lack of subject matter jurisdiction to bring this action for injunctive relief .

   The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish

[8]In finding that plaintiff's due process claim was cognizable, the court assumed that the threatened confiscation of plaintiff's personal laptop computer implicated the invasion of a legally protected interest.  In their motion for summary judgment, defendants do not advance the argument that plaintiff did not have a protected interest at stake and therefore, in resolving defendants' motion, the court again assumes the existence of a legally protected interest.

[9]The court declines to take judicial notice of a past ruling made in another case before this court.

1  that a genuine issue as to any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  As

2  stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely

3  upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific

4  facts in the form of affidavits, and/or admissible discovery material, in support of its contention that

5  the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities

6  Service, 391 U.S. 253,  289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

7      Plaintiff filed a verified opposition to defendants' motion for summary judgment on October

8  16, 2008.[10]  (Pltf's Opp., Court Doc. 32.)  Plaintiff argues that he has standing to bring this action

9  for injunctive relief because he has suffered injury as a result of defendants' policies, and he will

10  suffer further injuries in the future because defendants' policies continue to be implemented.

11  Plaintiff's evidence consists of his verified opposition with attached exhibits and the verified

12  complaint with attached exhibits.[11]

13      Plaintiff is currently housed at CSH and has owned a personal laptop computer since August

14  1, 2006.  (UF 1, 2.)  In 2006, CSH issued AD 654 providing for and establishing the policy for the

15  use of personal laptop computers by patients at CSH.  (UF 4, 5.)   In the verified complaint, plaintiff

16  declares that he signed an agreement pursuant to AD 654 allowing defendants to disable his laptop

17  computer before he was allowed to possess it and use it at CSH.  (Cmp. at 4:15-24.)  Plaintiff

18  submits a copy of such agreement as evidence, entitled Attachment "B" to AD 654, which states "Per

19  CSH Directive 654, Individuals may purchase laptop computers for personal use under specific

20  guidelines." (Exh. F to Cmp.)  Plaintiff declares that he has not violated the agreement, (Cmp. at

21  4:15.), but defendants did violate the agreement. (Cmp. at 3:27-28.)  Plaintiff declares that pursuant

22  to a moratorium issued by defendants on February 28, 2007, he is now prohibited from purchasing

23  computer equipment or software previously allowed under AD 654.  (Cmp. at 5:18-21.)  Plaintiff

24  declares that CD-RWs used to be available for purchase at the hospital canteen, but after February

25

26      [10]Plaintiff signed under penalty of perjury at the bottom of the proof or service between the last page of
plaintiff's opposition of October 16 and the attached exhibits.  The court accepts this entire document as a verified
27  opposition.

28      [11]The Court also considers plaintiff's arguments in his oppositions to defendants' motion to dismiss, filed
June 2, 2008 and July 16, 2008, as applicable.  (Docs. 20, 24.)

28, 2007, CD-RWs became contraband.  (Cmp. at 5:8-10.)  Plaintiff submits as evidence a copy of a Canteen Order Form dated 1/29/2007 showing that CD-RWs were available for purchase from the canteen for $0.85 each.  (Exh. D to Cmp.)  Plaintiff declares that the CSH administration verbally expressed to the patient body representatives that all laptops would be taken by the end of 2007, (Cmp. at 5:23-24.), and that defendants want to start a new program once they have forced all individuals to send their personal laptop computers home.  (Cmp. at 5:22-23.)   Plaintiff declares that defendants took most of his CD-RWs away after February 28, 2007, when CD-RWs became contraband because of a few individuals' misuse of CD-RWs.  (Cmp. at 5:10-12.)

To prove a threatened future injury, plaintiff must submit admissible evidence of a real and immediate effort by defendants to confiscate the laptop computer plaintiff purchased on August 1, 2006.  Defendants' moratorium of February 28, 2007 changed the policy allowing purchase of computers, but evidence shows it did not affect patients like plaintiff who owned laptop computers before the moratorium was issued.  Plaintiff argues that the very fact that CSH changed its policy creates a threat of other changes that will result in confiscation of his laptop.  This is conjecture on plaintiff's part.  The mere possibility that CSH will change its policies, which may or may not ever be applied to plaintiff, is insufficient to demonstrate a real and immediate threatened future injury.  As for plaintiff's statement that the CSH administration verbally expressed to the patient body representatives that all lap-tops will be taken by the end of year (2007), plaintiff has not submitted any admissible evidence of this policy, and the issue is now moot because 2007 is over.  (Cmp. at 5:23-24.)  Therefore, the court finds that plaintiff lacks standing to bring the action for injunctive relief.

### B.    Ripeness

Defendants also argue that this entire matter is not ripe for review.  The ripeness doctrine prevents premature adjudication.  It is aimed at cases that do not yet have a concrete impact upon the parties arising from a dispute, in an analysis similar to the injury in fact inquiry under the standing doctrine.  <u>Thomas v. Union Carbide Agricultural Prod. Co.</u>, 473, U.S. 568, 580 (1985); <u>Exxon Corp. V. Heinze</u>, 32 F.3d 1399, 1404 (9th Cir. 1994).  "[A]n unripe claim is not justiciable."  <u>Association of American Med. Colleges v. United States</u>, 217 F.3d 770, 784, fn. 9 (9th Cir. 2000).

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Lee v. State of Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997). Prudential ripeness involves two overarching considerations: (1) fitness of the issue for judicial review, whether the relevant issues are sufficiently focused to permit judicial resolution without further factual development, see Clinton v. Acequia, Inc., 94 F.3d 568, 572 (9th Cir. 1996), and (2) hardship to the parties of withholding review, whether the parties would suffer any hardship by postponing judicial review. See Alaska Right to Life Political Action Committee v. Feldman, 504 F3d 840, 851 (9th Cir. 2007). A case is not ripe where the outcome "hangs on future contingencies that may or may not occur." Clinton, 94 F.3d at 572. When considering whether an action such as this is fit for judicial review, "[t]he core question is whether the agency has completed its decision-making process, and whether the result of the process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992).

Defendants argue that this matter is not ripe for review for much the same reasons that the evidence demonstrates plaintiff's inability to establish injury. The basis of plaintiff's lawsuit stems from his belief that CSH is going to change its policy. (Cmp. at 5:2-7.) Evidence shows that CHS has been instructed that, pending the outcome of the statewide policy, it should not make any changes to its current computer policy. (UF 21.) The statewide computer policy committee has not yet decided on a policy for all the state hospitals. (UF 28.) Defendants conclude that it is not known if the new policy will result in the removal of plaintiff's computer or if plaintiff will even disagree with the terms of the policy. Because DMH has not completed its decision-making process and there has been no effort to implement a statewide policy, defendants argue that this action is premature. As for hardship to plaintiff for postponing judicial review, defendants state that the patients will have proper notice of any change in policy. (UF 29.) Defendants conclude that the matter is not ripe for review and on this basis plaintiff's action for injunctive relief should be dismissed.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish

that a genuine issue as to any material fact actually does exist.  See Matsushita, 475 U.S. at 586.  As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong, 474 F.2d at 749.

In his opposition, plaintiff makes much the same arguments about the existence of an injury in fact that he made in his opposition to defendants' motion to dismiss this action for lack of standing, as discussed above.  Plaintiff's arguments fail again for the same reasons.  It is clear to the court that the relevant issues in this action are not sufficiently focused to permit judicial resolution without further factual development, because the DMH has not completed its decision-making process and plaintiff's laptop has not been taken away.  The outcome of plaintiff's claim hangs on contingencies that may or may not occur, and if a decision is made, whether it will directly affect plaintiff.  Therefore, the court finds this entire matter unripe for review.

### C.    Eleventh Amendment

Defendants contend that plaintiff's claims for damages against them in their official capacity are barred by the Eleventh Amendment.  It is true that the Eleventh Amendment bars damages actions against state officials in their official capacity.  See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992).   However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity.  See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena, 976 F.2d at 472.  "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law.  See Kentucky v. Graham, 473 U.S. 159, 165 (1988).  Where plaintiff is seeking damages against a state official, such as in the instant action, this "necessarily implies" a personal-capacity suit because an official-capacity suit would be barred.  See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284

(9th Cir. 1994); <u>Price v. Akaka</u>, 928 F.2d 824, 828 (9th Cir. 1991).  Plaintiff brings this action for damages and injunctive relief against defendants in their official capacities.  (Cmp. at 3:13-14, 22-23.)  Defendants are both employees of the CDCR who were working at CSH at the time of the alleged events.  Therefore, both defendants are state officials and therefore, plaintiff's suit seeking damages against them in their official capacities is barred by the Eleventh Amendment.

### D. Due Process Clause of the Fourteenth Amendment

#### 1. Legal Standard for Civil Detainees

"[C]ivil detainees retain greater liberty protections than individuals detained under criminal process, and pre-adjudication detainees retain greater liberty protections than convicted ones . . . ." <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted).  Treatment is presumptively punitive when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his criminal counterparts, and when a pre-adjudication civil detainee is detained under conditions more restrictive than a post-adjudication civil detainee would face.  <u>Id.</u> at 932-33.

"The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility.  <u>See</u>, <u>e.g.</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 319-22 (1982).  In weighing those interests, it cannot be ignored that, unlike the plaintiff in <u>Youngberg</u> who was civilly committed because of mental infirmities, Sexually Violent Predators ("SVPs") have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others.  Therefore, the rights of SVPs may not necessarily be coexistensive with those of all other civilly detained persons."  <u>Hydrick v. Hunter</u>, 500 F.3d 978, 990 (9th Cir. 2007).  However, the conditions of confinement for SVPs cannot be more harsh than those under which prisoners are detained, except where a statute creates a relevant difference.  <u>Id.</u> at 989.

"In the civil commitment setting, a patient's liberty interests are balanced against the relevant state interests to determine whether the state has violated the patient's constitutional rights.  . . . Challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system.  Similarly, First Amendment challenges of [] policies must be analyzed in terms of the legitimate polices and goals

1   of [] treatment. . . ." <u>Spicier v. Richards</u> 2007 WL 4561101 (W.D.Wash. Dec 21, 2007) (NO. C07-

2   5109FDB) citing <u>Youngberg</u>, 457 U.S. at 318; <u>Pell v. Procunier</u>, 417 U.S. 817 (1974); and <u>Hydrick</u>,

3   500 F.3d at 990.

4          While the Fifth and Fourteenth Amendments prohibit a state from depriving "any person of

5   life, liberty, or property without due process of law," it is well settled that only a limited range of

6   interests fall within this provision.  A due process claim is cognizable only if there is a recognized

7   liberty or property interest at issue. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 530 (9th Cir. 1985).  Liberty and

8   property interests protected by the Fifth and Fourteenth Amendments may arise from only two

9   sources, the Due Process Clause itself and the laws of the states.  <u>Board of Pardons v. Allen</u>, 482

10  U.S. 369, 373 (1987); <u>Wolff v. McDonell</u>, 418 U.S. 539, 556-558 (1974).  The first step in

11  examining a procedural due process question is to determine whether the state's procedures attending

12  the deprivation were constitutionally sufficient.  If there is no protected interest, then the procedural

13  protections of the Due Process Clause do not attach.  <u>Board of Regents of State Colleges v. Roth</u>,

14  408 U.S. 564, 571 (1972); <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989);

15  <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983).

16         Based on the federal notice pleading standard set forth in Federal Rule of Civil Procedure

17  8(a), the court allowed plaintiff's claim to proceed, as it could not say it was clear that no relief could

18  be granted under any set of facts that could be proved consistent with the allegations.  <u>Swierkiewicz</u>

19  <u>v. Sorema N. A.</u>, 534 U.S. 506, 514 (2002).  In screening pursuant to 28 U.S.C. § 1915(e) or

20  resolving a motion to dismiss for failure to state a claim, "'[t]he issue is not whether a plaintiff will

21  ultimately prevail but whether the claimant is entitled to offer evidence to support the claims Indeed

22  it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not

23  the test.'"  <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (quoting <u>Scheuer v. Rhodes</u>, 416

24  U.S. 232, 236 (1974)); <u>see also</u> <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings

25  ///

26  ///

27  ///

28  ///

1  need suffice only to put the opposing party on notice of the claim . . . .'" (quoting <u>Fontana v. Haskin</u>,

2  262 F.3d 871, 977 (9th Cir. 2001))).[12]

3    Now, with the benefit of the submission of evidence in this case, it is clear that plaintiff has

4  not suffered an injury in fact and there is no deprivation at issue.  The court assumes that plaintiff

5  has a protected interest in possession of his laptop computer.  However, because plaintiff's laptop

6  computer has not been taken from him, he has no evidence that he was deprived of a protected

7  interest.  Nor has plaintiff proven threatened future injury, because he has not submitted admissible

8  evidence of a real and immediate effort by defendants to confiscate the laptop computer.  As

9  discussed above, the mere possibility that CSH will change its policies, which may or may not ever

10  be applied to plaintiff, is insufficient to demonstrate a real and immediate threatened future injury.

11    Accordingly, the court finds that defendants have proven a complete failure of proof by

12  plaintiff of deprivation of a protected interest, which necessarily renders all other facts immaterial

13  on the issue of Due Process.  Because the evidence before the district court satisfies the standard for

14  entry of summary judgment, as set forth in Rule 56(c), summary judgment should be granted.

15  **V. CONCLUSION AND RECOMMENDATION**

16    Based on the foregoing analysis, the court finds there exists no genuine issue as to any

17  material fact, and defendants are entitled to judgment as a matter of law.

18    Accordingly, the court HEREBY RECOMMENDS that defendants' motion for summary

19  judgment be GRANTED, concluding this action.

20    The Court further ORDERS that these Findings and Recommendations be submitted to the

21  United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. §

22  636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court,

23  Eastern District of California.  Within THIRTY (30) days after being served with a copy of these

24  Findings and Recommendations, any party may file written Objections with the Court and serve a

25  copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's

26

27    [12]"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss
28  the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief
may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    February 3, 2009          /s/ Sandra M. Snyder**
                                UNITED STATES MAGISTRATE JUDGE